UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WARREN ENVIRONMENTAL, INC. <br> and A&W MAINTENANCE INC., <br> <br> Plaintiffs, <br> <br> v. <br> <br> JON FISHBACK and <br> RED DOG USA, INC., <br> <br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Civil Action No. 12-10421-JLT |

MEMORANDUM

March 26, 2013

TAURO, J.

I.   Introduction

Plaintiffs Warren Environmental, Inc. and A&W Maintenance, Inc. (together "Warren") bring this action against Defendants Jon Fishback and Red Dog USA, Inc. ("Red Dog") for numerous counts regarding the alleged misappropriation of Warren's trade secrets. Red Dog now moves to dismiss Warren's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the following reasons, Red Dog's Motion to Dismiss [#8] is DENIED.

II.   Factual Background[1]

Warren, a Massachusetts company, is an industry leader in epoxy spray technology used to fix pipe leakage problems.[2] As part of its business model, Warren allows independent epoxy

---

[1] This court presents the facts in the light most favorable to Warren. Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

[2] Compl. ¶¶ 29, 31 [#1].

applicators to use its trade secrets through licensing agreements.

Warren alleges that Fishback misappropriated the company's trade secrets. In April 2010, Fishback and his colleague Steve Pierson met with Warren to obtain a licensing agreement. Before touring Warren's headquarters, Fishback and Pierson both signed ten-year non-compete and indefinite non-disclosure agreements with Warren.[3] Fishback secretly photographed Warren's confidential epoxy formulas and spray systems.[4] Fishback later boasted privately to Pierson that he could reproduce Warren's confidential technologies for one-sixth of Warren's price.[5]

In August 2010, Pierson and Fishback incorporated Smart Epoxy Linings ("SEL") as a Utah limited liability company.[6] SEL secured a licensing arrangement with Warren and purchased a special Warren epoxy spray rig.[7] Fishback disassembled and carefully examined the rig to "see how things worked."[8] He also suggested to Pierson that they abandon the Warren agreement and instead formulate epoxies in-house.[9] Concerned that Fishback would jeopardize SEL's licensing agreement, SEL terminated Fishback from the company.[10]

After his removal, Fishback approached a business acquaintance, Matt Peterson, in January

---

[3] Compl. Ex. 1, §§ 1, 2.1, 4.1-4.4 [#1-1].

[4] Pierson Aff. ¶ 10 [#13-1].

[5] Pierson Aff. ¶¶ 11-14.

[6] Compl. ¶ 47.

[7] Compl. ¶ 48; Pierson Aff. ¶ 16.

[8] Compl. ¶ 50; Pierson Aff. ¶ 16.

[9] Pierson Aff. ¶ 17.

[10] Compl. ¶ 51; Pierson Aff. ¶ 17.

2011.[11] Matt Peterson referred Fishback to his father, Scott Peterson, a chemist with over twenty years of experience formulating epoxy compounds.[12] Scott Peterson met with Fishback and listened to Fishback's epoxy spray experience with SEL. After Scott Peterson asked Fishback about the circumstances behind his removal from SEL, Fishback informed Scott Peterson that he had "never signed a non-competition agreement that would prevent him from working in the epoxy industry."[13]

Scott Peterson ultimately decided to design a product similar to Warren's sewage pipe restoration system, and he took steps with Fishback and Matt Peterson to create this enterprise in early 2011.[14] Scott Peterson designed a suitable epoxy within several weeks,[15] with some input regarding product marketing from Fishback.[16] In addition, Matt Peterson registered Red Dog's website at "reddogusa.com" in February 2011. The website listed Matt Peterson as "Operations Manager," Scott Peterson as "Lead Chemist," and Fishback as "National Sales Rep.," with corresponding Red Dog email addresses for each individual.[17] Although the website specifically named Fishback, Red Dog never registered Fishback as a corporate officer.[18]

---

[11] Scott Peterson Aff. ¶ 7 [#8-2].

[12] Scott Peterson Aff. ¶¶ 5, 7.

[13] Scott Peterson Aff. ¶ 14.

[14] Scott Peterson Aff. ¶¶ 8-9, 11-12.

[15] See, e.g., Def.'s Mem. Supp. Mot. to Dismiss ¶ 5 [#9].

[16] Scott Peterson Suppl. Aff. ¶ 6 [#15-2].

[17] Compl. Ex. 3, at 2 [#1-3].

[18] Scott Peterson Aff. ¶¶ 12, 15-16.

Red Dog's only project to date involves a municipal repair operation managed by Fishback in Broomfield, Colorado.[19] Scott Peterson, as a founder and officer of Red Dog, told Fishback to bid for the project on behalf of the company.[20] Attendance sheets from Broomfield show that Fishback signed himself into meetings as "VP" of Red Dog.[21] Fishback authorized the actual contract between Red Dog and Broomfield, dated December 14, 2011, representing himself as "President" of Red Dog.[22] Fishback also signed Red Dog's W-9 tax form and authorized Red Dog's performance, labor, and material payment bonds.[23] On other Broomfield documents, Fishback recorded himself as the "Project Manager" and provided his Red Dog email address at "jon@reddogusa.com."[24] Red Dog did not oppose these representations.[25]

Throughout 2011 and 2012, Red Dog actively solicited business from Warren clients in Virginia, Michigan, and Colorado,[26] claiming that Red Dog's epoxies were "as good as Warren['s]."[27] When Fishback led tours of the Red Dog facility for potential clients, he described

---

[19] Scott Peterson Aff. ¶ 13.

[20] See Scott Peterson Aff. ¶ 13.

[21] Pls.' Opp'n to Def.'s Mot. to Dismiss Ex. 3, at 2 [#13-3].

[22] Pls.' Opp'n to Def.'s Mot. to Dismiss Ex. 4, at 7, 9 [#13-4].

[23] Pls.' Opp'n to Def.'s Mot. to Dismiss Exs. 5-7 [#13-5 to #13-7].

[24] Pls.' Opp'n to Def.'s Mot. to Dismiss Ex. 8, at 1-3 [#13-8].

[25] Pls.' Opp'n to Def.'s Mot. to Dismiss 2, 6-7 [#13].

[26] Compl. ¶¶ 66-69, 77-78.

[27] Carl Aff. ¶¶ 13-19 [#13-12].

himself as a Red Dog representative and advertised Red Dog's products enthusiastically.[28] Fishback also emphasized his training as a former Warren licensee to impress these clients.[29] Matt Peterson, a Red Dog officer, accompanied Fishback on many client tours.[30]

After Warren discovered these alleged misuses of its trade secrets, Warren sued Fishback and Red Dog for various contract and tort claims. Red Dog now moves to dismiss Warren's complaint for lack of personal jurisdiction.

III.   Discussion

   A.   Legal Standard

When evaluating Red Dog's motion to dismiss for lack of personal jurisdiction, this court applies the prima facie standard, the "most conventional" jurisdictional analysis.[31] Under this analysis, the court first presumes that Warren's properly supported facts are true, then accepts any uncontroverted facts presented by Red Dog.[32] This court considers whether the evidence, "if credited, is enough to support findings of all facts essential to personal jurisdiction."[33] The court,

---

[28] Carl Aff. ¶¶ 6, 10 ("I went to the storefront and was met by Jon Fishback, Matt Petersen [sic] and Dustin Baxter. All three introduced themselves as Reddog [sic] representatives. . . . Jon Fishback did most of the talking.").

[29] See Compl. ¶ 79; Carl Aff. ¶ 18.

[30] See Carl Aff. ¶¶ 6-8.

[31] Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

[32] Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

[33] Boit v. Gar-Tec Prods., 967 F.2d 671, 675 (1st Cir. 1992).

however, cannot "credit conclusory allegations or draw farfetched inferences."[34]

   B.   <u>Personal Jurisdiction Analysis</u>[35]

Red Dog has no contacts with Massachusetts apart from its relationship with Fishback. Thus, to exercise personal jurisdiction over Red Dog, this court must proceed under an "imputed contacts" analysis.[36] First, the court must determine whether the facts support a prima facie finding of an agency relationship between Defendants that is sufficient to impute Fishback's Massachusetts contacts to Red Dog. Then, the court must decide whether these imputed contacts establish a prima facie showing of personal jurisdiction.[37]

   1.   Red Dog's Imputed Contacts with Massachusetts

For the purposes of personal jurisdiction, "the agent's actions may be attributed to the principal . . . if the principal later ratifies the agent's conduct."[38] This court finds that Warren has established a prima facie showing of an agency relationship between Fishback and Red Dog because of the actions and omissions of top Red Dog officers.

Scott Peterson, as the founder and head of Red Dog, authorized Fishback to act as Red Dog's agent by granting Fishback the actual authority to bid on, authorize, and manage the

---

[34] <u>Negron-Torres v. Verizon Commc'ns</u>, 478 F.3d 19, 23 (1st Cir. 2007) (quoting <u>Mass Sch. of Law at Andover</u>, 142 F.3d at 34).

[35] Fishback does not dispute this court's personal jurisdiction.

[36] <u>Daynard</u>, 290 F.3d at 52-53.

[37] <u>Id.</u>

[38] <u>Id.</u> at 55 (citing <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1073 (9th Cir. 2001)); <u>see also</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 314 (1945) (recognizing the "frequently stated" rule that the actions of a corporation's agents within the forum state may subject the corporation to personal jurisdiction within that state).

6

Broomfield project.[39] Furthermore, since the Broomfield contract remains the company's only project,[40] Red Dog vested Fishback with substantial responsibilities that support a prima facie showing of an agency relationship through actual authority.

Moreover, the facts provide sufficient evidence under a prima facie analysis to demonstrate Red Dog's ratification of an agency relationship through acquiescence.[41] During the time that Fishback maintained actual authority over the Broomfield project, Red Dog did not oppose Fishback's characterizations of himself as the "President" of Red Dog or the "Project Manager" of the Broomfield job. Additionally, Fishback regularly met with Red Dog clients in his role as the company's "National Sales Rep." while accompanied by Red Dog officer Matt Peterson.

Consequently, because the facts at this prima facie procedural juncture indicate that Fishback acted as Red Dog's agent, this court imputes Fishback's in-state contacts to Red Dog.[42]

          2.        Massachusetts's Exercise of Personal Jurisdiction

Warren must next demonstrate that this court's exercise of jurisdiction comports with both the Massachusetts long-arm statute and constitutional due process.[43] This remaining constitutional

---

[39] Scott Peterson Aff. ¶ 13.

[40] Scott Peterson Aff. ¶ 13.

[41] See ICC v. Holmes Transp., Inc., 983 F.2d 1122, 1129 (1st Cir. 1993) (citing Restatement (Second) of Agency § 43 (1958)); LaBonte v. White Constr. Co., 292 N.E.2d 352, 355 (Mass. 1973) ("The existence of agency can be implied from 'a course of conduct showing that a principal has repeatedly acquiesced therein and adopted acts of the same kind.' " (quoting Hurley v. Ornsteen, 42 N.E.2d 273, 276 (Mass. 1942))).

[42] See, e.g., Daynard, 290 F.3d at 52-53, 57; Wilcox Indus. Corp. v. Hansen, No. 11-551, 2012 WL 1246146, at *4 (D.N.H. Apr. 13, 2012); Stolle Mach. Co. v. RAM Precision Indus., No. 10-155, 2011 WL 6293323, at *7-9 (S.D. Ohio Dec. 15, 2011).

[43] Daynard, 290 F.3d at 52-53.

issue presents an "easier question"[44] in light of Fishback's imputed contacts.

      a.      Massachusetts Long-Arm Statute

The Massachusetts long-arm statute requires that Warren's cause of action arise out of Red Dog's "causing tortious injury in this commonwealth."[45] Because the Massachusetts Supreme Judicial Court has interpreted the long-arm statute's reach as limited only by constitutional due process,[46] this court proceeds directly to the due process analysis.

      b.      Fourteenth Amendment Due Process

The court's exercise of personal jurisdiction must fall within the limits of due process under the Fourteenth Amendment of the Constitution.[47] The First Circuit uses a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.[48]

      i.      *Relatedness*

Red Dog's contacts with Massachusetts must form an " 'important, or [at least] material,

---

[44] Id. at 60.

[45] Mass. Gen. Laws ch. 223A, § 3(d).

[46] "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972) ("We see the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."); see Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011) ("We have construed the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution.").

[47] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

[48] United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

element of proof' in the plaintiff's case."[49] These material contacts include those imputed from Fishback's alleged misconduct.[50]

Warren provides sufficient evidence to satisfy this requirement. Its action directly arose from Red Dog's alleged misuse of trade secrets.[51] Moreover, this court imputes Fishback's Massachusetts contacts to Red Dog, and those contacts are clearly related to Warren's claims.[52] Thus, Warren's actions "directly arise out of, or relate to," Red Dog's Massachusetts contacts.[53]

    ii.    *Purposeful Availment*

The two cornerstones of purposeful availment are voluntariness and foreseeability. Voluntariness requires that Red Dog's conduct cannot be based on the "unilateral actions of another party or a third person."[54] Foreseeability requires the reasonable anticipation that this court could exercise jurisdiction over Red Dog based on its contacts in Massachusetts.[55]

---

[49] Id. (alteration in original) (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)).

[50] Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52-53 (1st Cir. 2002); Stolle Mach. Co. v. RAM Precision Indus., No. 10-155, 2011 WL 6293323, at *9 (S.D. Ohio Dec. 15, 2011) (citing Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 553 (6th Cir. 2007)).

[51] See Wilcox Indus. Corp. v. Hansen, No. 11-551, 2012 WL 1246146, at *5 (D.N.H. Apr. 13, 2012) (finding that plaintiff "easily satisfied" the relatedness requirement because defendant's tortious forum state conduct " 'gave birth to the cause of action' " (quoting Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998))).

[52] Stolle Mach. Co., 2011 WL 6293323, at *9 (quoting Air Prods. & Controls, Inc., 503 F.3d at 553).

[53] See 163 Pleasant St. Corp., 960 F.2d at 1089.

[54] Nowak v. Tak How Invs., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)).

[55] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).

9

Warren provides sufficient evidence to establish that Red Dog acted in a voluntary manner that renders the exercise of jurisdiction by this court foreseeable. First, based on the alleged agency relationship between Red Dog and Fishback, this court imputes Fishback's purportedly tortious actions to Red Dog. According to Warren, Fishback intentionally stole Warren's trade secrets and used them to poach Warren's customers and projects.[56] Fishback reasonably could have foreseen that the harm from his actions would center on Warren in Massachusetts.[57]

Second, even without these imputed contacts, Red Dog satisfies foreseeability and voluntariness under a prima facie test because it "should have been aware"[58] that Fishback carried Warren's trade secrets with him, even as it placed him in an important project management role.

The evidence under a prima facie analysis sufficiently demonstrates that Scott Peterson, an officer and director of Red Dog, should have known that working with Fishback would expose the company to jurisdiction in this state. When Scott Peterson asked Fishback whether he had signed a non-compete agreement, Fishback said "no."[59] Scott Peterson never investigated further, despite

---

[56] Compl. ¶¶ 62, 79.

[57] See Calder v. Jones, 465 U.S. 783, 789-90 (1984); United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001).

[58] Stolle Mach. Co. v. RAM Precision Indus., No. 10-155, 2011 WL 6293323, at *7-9 (S.D. Ohio Dec. 15, 2011) (quoting Thermal Components Co. v. Griffith, 98 F. Supp. 2d 1224, 1230 (D. Kan. 2000)); Elliott Sales Group, Inc. v. Dare Dev. Group, Inc., No. 96-592, 1998 WL 34101010, at *5 (D.R.I. Aug. 5, 1998) ("[Defendant] knew or should have known that any misappropriation of [Plaintiff's] design would cause harm to [Plaintiff's] business, based in Rhode Island, thereby making it reasonably foreseeable that [Defendant] would be haled into court here."); cf. Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 360 (D. Mass. 1993) ("[T]he requisite notice may be found where the defendant knew *or should have known* that the proffered information is the trade secret of another." (emphasis in original) (citing Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 407 N.E.2d 319, 323-24 (Mass. 1980))).

[59] Scott Peterson Aff. ¶ 14.

knowing that non-compete agreements exist in the industry. Instead, he believed Fishback, even though he knew that SEL had fired him for cause.[60] Consequently, Scott Peterson facilitated Fishback's misuse of Warren's trade secrets by allowing Fishback to manage the Broomfield project and to utilize his prior experience as a Warren licensee on behalf of Red Dog.[61]

Additionally, the evidence under a prima facie analysis shows that Matt Peterson, an officer and director of Red Dog, should have known that the company's relationship with Fishback could purposefully avail the company of this state's jurisdiction. After his termination from SEL, Fishback approached Matt Peterson and explained his situation, including his prior licensing arrangement with Warren.[62] Moreover, when Matt Peterson accompanied Fishback on tours with potential clients, Fishback boasted about his training and experience as a Warren licensee to impress these clients.[63] Despite multiple red flags, Matt Peterson neither opposed Fishback's representations nor checked Fishback's ability to work in the industry. Accordingly, Red Dog should have known that Fishback's efforts on behalf of Red Dog to take business away from Warren would implicate this court's jurisdiction.

Thus, for the purposes of a prima facie analysis, Warren has alleged facts sufficient to show that Red Dog purposefully availed itself of this court's jurisdiction.

---

[60] See Scott Peterson Aff. ¶¶ 7, 9.

[61] See, e.g., Pls.' Opp'n to Def.'s Mot. to Dismiss Ex. 9 [#13-9] ("[Fishback] will be remaining on site [in Broomfield] for the majority of the time to ensure the schedule stays on track.").

[62] Fishback Aff. ¶¶ 6-9 [#15-1].

[63] Carl Aff. ¶¶ 6, 17-19 (recounting that, while Fishback and Matt Peterson led a tour for a potential client, "Fishback said that [SEL] was a licensee of Warren Environmental and that he had personally visited Warren's facility in Massachusetts.").

11

              iii.      *Gestalt Factors*

Finally, this court must consider the reasonableness of exercising jurisdiction over Red Dog using the "gestalt" factors, which consist of the: (1) burden on the defendant; (2) interest of the forum state; (3) convenience to the plaintiff; (4) effect on judicial efficiency; and (5) promotion of important social policy.[64]

The court concludes that the gestalt factors support this court's jurisdiction. Massachusetts clearly possesses a strong interest in protecting one of its corporate citizens from tortious misappropriation of trade secrets.[65] Furthermore, this court "must accord deference to the [plaintiff's] choice of a Massachusetts forum"[66] because the inconvenience to Red Dog of proceeding in this state, while present, is "not by any means unusual."[67] Finally, proceeding in Massachusetts does not impose an impediment to the administration of justice, because no other forum has a more compelling interest in the social policies at stake.[68] Therefore, this court's

---

[64] Nowak v. Tak How Invs., 94 F.3d 708, 717 (1st Cir. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

[65] Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994) ("The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders." (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984))).

[66] Nowak, 94 F.3d at 718 (citing Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 151 (1st Cir. 1995)).

[67] Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 62 (1st Cir. 2002); see McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222-23 (1957) ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in [another] State . . . .").

[68] See, e.g., Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994); Ticketmaster-N.Y., Inc., 26 F.3d at 210-12; United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 46-47 (1st Cir. 1993).

exercise of personal jurisdiction over Red Dog, at this prima facie procedural stage, is reasonable and "does not offend 'traditional notions of fair play and substantial justice.' "[69]

IV. <u>Conclusion</u>

For the foregoing reasons, Defendant Red Dog's <u>Motion to Dismiss</u> [#8] is DENIED.[70]

AN ORDER HAS ISSUED.

<u>/s/ Joseph L. Tauro      </u>
United States District Judge

---

[69] <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citations omitted).

[70] The court emphasizes that it reaches this result under the prima facie approach. If, upon further discovery, new evidence establishes that this court's exercise of personal jurisdiction is unwarranted, then Red Dog may renew its jurisdictional challenge. <u>Daynard</u>, 290 F.3d at 63.